[No. 22580. Department One. June 25, 1930.]
CLARK BROTHERS & KLEIN, INCOPORATED, *Plaintiff*, v.
J. GRANT HINKLE, *as Secretary of State*,
*Respondent.*[1]

*John E. Blair,* for plaintiff.

*The Attorney General* and *E. W. Anderson, Assistant,* for respondent.

MILLARD, J.—In this proceeding, an original application for a writ of mandate to compel the secretary of state to file a certificate amending articles of incorporation and the respondent's demurrer to relator's petition constitute the record, which presents the following facts:

Pursuant to the laws of this state, the relator was incorporated under the name of "International Investment & Trust Company" in 1901, with its principal place of business at Spokane, Washington, a city having a population at the present time of one hundred thousand or more. Subsequent to 1901, the articles of incorporation were amended, the corporate name of relator being changed to "Clark Bros. & Klein Trust

[1]Reported in 289 Pac. 59.

Company.'' In 1919, because of the trust business conducted by relator was negligible in amount,

''. . . and at the suggestion of the department of banking of the state of .Washington, and in order to escape the cost and expense of examinations by state officials required to be made of all corporations engaged in trust business,''

the relator filed amended articles of incorporation changing its corporate name to its present name of ''Clark Bros. & Klein, Inc.'' The provision that one of the purposes for which the corporation was formed was to engage in the trust business was permitted to remain, and now remains, in the articles of incorporation. Desiring to again engage in trust business, the relator on February 6, 1930, tendered to the secretary of state ten dollars, with the request that he file a certificate amending relator's articles of incorporation changing the corporate name to ''Clark Bros. & Klein Trust Co. Inc.''

Inasmuch as the paid-in capital stock of the relator is fifteen thousand dollars, and its principal place of business is in a city having a population in excess of one hundred thousand, and for failure of relator to comply with other provisions of the statute relating to trust companies, the secretary of state refused to accept the filing fee and to receive and file the certificate amending the articles of incorporation, unless the relator increased its paid-in capital stock to two hundred thousand dollars, as provided by Rem. Comp. Stat., § 3226, and also conforms to other conditions imposed by the act authorizing the conducting of a trust business.

The relator corporation was organized as a trust company under laws existing prior to the enactment of chapter 80, Laws of 1917, p. 271, relating to banks and trust companies. A corporation engaged in trust

business at the time the 1917 act became effective, was authorized by the act to continue business without amending its articles of incorporation as to corporate name, amount of capital stock, number and terms of directors or form of articles though such articles were not in compliance with the requirements of the new act.

"Every corporation, which at the time this law becomes operative, is actually and publicly engaged in banking or trust business in this state in full compliance with the laws hereof, which were in force immediately prior to the time when this law becomes operative, may, if it otherwise complies with the provisions of this act, continue its said business, subject to the terms and regulations hereof and without amending its articles of incorporation, although its name and the amount of its capital stock, the number or length of terms of its directors or the form of its articles of incorporation do not comply with the requirements of this act: Provided:

"(1) That any such bank, which was by the state bank examiner lawfully permitted to operate, although its capital stock was not fully paid in, shall pay in the balance of its capital stock at such times and in such amounts as said examiner may require.

"(2) That any bank or trust company which shall amend its articles of incorporation must in such event comply with all the requirements of this act.

"(3) That the directors of trust companies at the time this act becomes operative may continue to hold such office for the terms for which elected, but the terms of all directors hereafter elected shall be governed by this act." Laws of 1917, p. 306, § 78 (Rem. Comp. Stat., § 3285).

It will be observed that subdivision 2 of the foregoing section excepts from the operation of the saving clause any trust company amending its articles of incorporation. In the event of an amendment of its articles, the corporation must "comply with all the requirements of this act."

By the 1919 amendment of its articles of incorporation, the relator's corporate name was changed from "Clark Bros. & Klein Trust Co." to "Clark Bros. & Klein, Inc." The articles were further amended to authorize the relator to write insurance and bonds of all kinds. The provision of the articles asserting trust powers, and under which the relator had previously exercised such powers, was not in anywise changed. The relator withdrew from the trust company business and escaped the burdens imposed by the 1917 trust company statute. May relator now, by the amendment of its articles of incorporation, restore the corporate name to "Clark Bros. & Klein Trust Co., Inc." and again engage in a trust business without complying with the requirements of the trust company act?

█ One of the essentials which must appear in the articles of a corporation is its name. The word "trust" is a part of the corporate name of a corporation engaged in trust company business in this state.

"The name of every trust company shall contain the word 'trust.' " Rem. Comp. Stat., § 3225.

The relator was not, in fact, engaged in trust business when it requested, February 6, 1930, filing of a certificate amending its articles to permit it to conduct a trust business. We said in *State ex rel. Osborne, Tremper & Co. v. Nichols,* 38 Wash. 309, 80 Pac. 462, that:

"Every corporation has certain essentials which must appear in its articles. In this state these essentials are: the corporate name, the corporate objects, the amount of the capital stock and the number of shares, the time of the corporate existence, the number of trustees and their names, and the principal place of business. It seems to us that a change in any one of these essentials is, to that extent, the creation of a new corporation. Should the legislature declare that no corporation should thereafter be created for a par-

ticular purpose, or to engage in a particular business, it would be idle to say that a pre-existing corporation could so amend its articles as to accomplish the prohibited objects, without violating the letter and the spirit of the statute. So in this case, the change in the name of a pre-existing corporation, so as to make use of the word 'trust' as a part thereof, is, to that extent, the creation of a new corporation. . . ."

The foregoing is applicable to the principle involved in the case at bar. The change in the name of the relator corporation to make use of the word "trust" as a part of the corporate name is, to that extent, the creation of a new corporation. True, a mere change in the name of a corporation is a mere amendment, and does not, as a general rule, in any way affect the identity of the corporation; however, where, as in the case at bar, it is essential to the exercise of the power to conduct a trust business that the word "trust" must appear in the articles of incorporation as the name of the corporation, a different situation is presented. By such amendment the purpose of the corporation is changed.

It must be assumed that, in good faith, for the very purpose of changing the character of its business, the relator amended its articles of incorporation in 1919. It thereby abandoned its trust powers; and the continued assertion to the present date of such powers by its charter provision is without legal force. Essential to the exercise of trust powers, is the statement of that purpose in the articles of incorporation. So, too, it is necessary that in the articles of incorporation must appear the name of the corporation, and embraced in that name must be the word "trust." One is prerequisite to the other. The absence of either is fatal and precludes the corporation from conducting a trust business. The language asserting the purpose

to exercise trust powers is without vitality unless the word "trust" is included in the articles of incorporation as a part of the corporate name. The relator, by surrendering that portion of its name, lost the power to conduct a trust business in this state. The change, in 1919, of the corporate name, under the facts of this case and the law applicable thereto, constituted the creating of a new corporation. Having elected to relinquish, in 1919, the right granted by § 78, ch. 80, Laws of 1917, p. 306 (Rem. Comp. Stat., § 3285), to continue as a trust company without amending its articles of incorporation and to thereby avoid the burdens of the 1917 act, the status of the relator is now that of a corporation commencing business; therefore it can not engage in the trust business without compliance with the statutory requirements.

The writ is denied.

MITCHELL, C. J., PARKER, TOLMAN, and BEALS, JJ., concur.